UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BIOSPYDER TECHNOLOGIES, INC., <br><br>Plaintiffs, <br><br>v. <br><br>HTG MOLECULAR DIAGNOSTICS, INC., <br><br>Defendants. | Case No. 5:20-cv-05607-EJD <br><br>**ORDER GRANTING MOTION TO TRANSFER VENUE** <br><br>Re: Dkt. No. 19 |

The instant case is a patent declaratory judgment action. Plaintiff BioSpyder Technologies, Inc. ("BioSpyder") seeks a declaration that it did not infringe upon Defendant HTG Molecular Diagnostic, Inc.'s ("HTG") patent. Dkt. No. 1, ("Compl."). Presently before the Court is HTG's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) to the District of Arizona. Dkt. No. 19, ("Mot"). BioSpyder opposes the motion to transfer. Dkt. No. 23, ("Opp."). Additionally, BioSpyder objects to declaratory statements made in support of HTG's motion. Dkt. No. 27, ("Obj.").[1]

The Court took this matter under submission without hearing oral argument pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, HTG's motion is GRANTED.

---

[1] Civil Local Rule 7-5(b) requires that declarations only contain facts, meet the requirements of Fed. R. Civ. P. 56(e), and avoid conclusions. Pursuant to Fed. R. Civ. P. 56(c), all declarations "used to support or oppose a motion must be made on personal knowledge." The statements noted in BioSpyder's Objection go beyond the realm of personal knowledge into speculation when declarant purports to know the extent of future testimony by third-party witnesses. For this reason, the statements shall be stricken.

Case No.: 5:20-cv-05607-EJD
ORDER GRANTING MOTION TO TRANSFER VENUE
1

## I. BACKGROUND

BioSpyder is a Delaware company headquartered in Carlsbad, California. Compl. ¶ 2. BioSpyder develops products designed to monitor the expression of genes and markets these products in the Northern District of California and across the United States. *Id*. ¶ 5. One such product is a novel technology called TempO-Seq, a gene expression profiling assay designed to monitor the expression of genes with high throughput, while minimalizing background signal. *Id*. ¶ 6.

HTG is incorporated in Delaware with its headquarters in Tucson, Arizona. *Id*. ¶ 3. The company also has a facility in San Carlos, California. *Id*. ¶ 4. Like BioSpyder, HTG offers assays, systems, and services related to multiplexed gene assays. *Id*. ¶ 9. In June of 2020, HTG's legal counsel sent a letter to BioSpyder alleging that the TempO-Seq technology infringed HTG's U.S. Patent No. 8,741,564 ("Patent"). *Id*. ¶ 11. On August 12, 2020, after the exchange of several letters, BioSpyder brought this action against HTG seeking a declaratory judgment of non-infringement of HTG's Patent. *See id.* ¶¶ 40-42. HTG filed the instant motion to transfer the case to the District of Arizona on October 28, 2020.

## II. LEGAL STANDARD

A court may transfer an action to another district where the action might have been brought for the convenience of the parties, the convenience of the witnesses, and in the interest of justice. 28 U.S.C. § 1404(a). When determining whether a transfer is proper, a court must employ a two-step analysis. A court must first consider the threshold question of whether the case could have been brought in the forum to which the moving party seeks to transfer the case. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *see also Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) ("In determining whether an action might have been brought in a district, the court looks to whether the action initially could have been commenced in that district.") (internal quotation marks and citations omitted). Once the party seeking transfer has made this showing, district courts have discretion to consider motions to change venue based on an "individualized, case-by-

Case No.: 5:20-cv-05607-EJD
ORDER GRANTING MOTION TO TRANSFER VENUE
2

case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

In determining whether to transfer an action pursuant to Section 1404(a), the Court considers the following factors: (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consideration of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *Stovall v. Align Tech., Inc.*, No. 5:18-CV-07540-EJD, 2019 WL 3945104, at *2 (N.D. Cal. 2019). "The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer." *Alul v. Am. Honda Motor Co., Inc.*, No. 16-04384-JST, 2016 WL 7116934, at *2 (N.D. Cal. Dec. 7, 2016) (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)). A transfer is not appropriate if the result is merely to shift the inconvenience from one party to another. *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964).

### III. DISCUSSION

As a threshold matter, the parties do not dispute that this action could have been properly brought in the District of Arizona. Opp. at 6. Therefore, the Court will proceed with weighing the various factors.

#### A. Plaintiff's Choice of Forum

The plaintiff's choice of forum is typically accorded significant deference unless the defendant can show that other convenience factors clearly outweigh this choice. *Glaxo Grp. Ltd. v. Genentech, Inc.*, No. C 10-00675 JSW, 2010 WL 1445666, at *4 (N.D. Cal. Apr. 12, 2010). Nevertheless, this deference is comparably eroded when plaintiff does not reside in the chosen forum. *Nanografix Corp. v. Pollard Banknote Ltd.*, No. CV 18-6735-GW (RAOX), 2019 WL 2240439, at *4 (C.D. Cal. Feb. 28, 2019). Moreover, deference is further reduced when the operative facts occur outside of the forum. *TransPerfect Glob., Inc. v. Motionpoint Corp.*, No. 10-02590 CW, 2010 WL 3619565, at *2 (N.D. Cal. Sept. 13, 2010). As deference decreases, the

Case No.: 5:20-cv-05607-EJD
ORDER GRANTING MOTION TO TRANSFER VENUE
3

defendant's burden to challenge the plaintiff's choice of forum also decreases. *Glaxo Grp. Ltd.*, 2010 WL 1445666, at *4.

In this case, deference to BioSpyder's choice of forum is diminished as it chose to litigate away from the forum in which it resides and because the operative facts of the dispute do not arise in the Northern District of California. BioSpyder is headquartered in Carlsbad – located in the Southern District of California. Compl. ¶ 2. It does not appear that BioSpyder maintains any physical presence, such as satellite offices or manufacturing facilities, in this district. *See TransPerfect*, WL 3619565, at *2 (N.D. Cal. Sept. 13, 2010) (holding the presence of two offices and the "architect" of the technology in the district defeat claim that plaintiff litigating away from home). Moreover, there is no mention of BioSpyder employees located in this district.

As the Court will elaborate below, the availability of operative facts, known as the "center of gravity," is in the District of Arizona. *See McCormack v. Safeway Stores, Inc.*, No. C 12-4377 MEJ, 2012 WL 5948965, at *4 (N.D. Cal. Nov. 28, 2012) ("A fundamental principle underpinning the § 1404(a) analysis is that litigation should proceed 'in that place where the case finds its center of gravity.'") (citation omitted). Taken together, deference to BioSpyder's choice of forum is significantly reduced, and therefore weighs minimally against transfer.

### B.   Convenience of the Parties

In cases involving patent infringement, "the parties' convenience will be served by facilitated access to the witnesses and documents that disclose the history of [the defendant's] relevant products and the design and development of the devices." *Nanografix*, 2019 WL 2240439, at *5 (citing *Arete Power, Inc. v. Beacon Power Corp.*, No. C 07-5167 WDB, 2008 WL 508477, at *6 (N.D. Cal. Feb 22, 2008)). The location of "the district court ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production. *Am. GNC Corp. v. GoPro, Inc.*, No. 18-CV-00968 BAS-BLM, 2018 WL 6074395, at *17 (citing *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005)). Thus, the center of gravity is "where significant marketing, engineering, and pricing decisions are made regarding the accused [infringing] products." *Am. GNC Corp.*, 2018 WL 6074395, at *17.

Case No.: 5:20-cv-05607-EJD
ORDER GRANTING MOTION TO TRANSFER VENUE
4

Here, there is no evidence that any significant work on either BioSpyder's TempO-Seq technology or HTG's Patent occurred in the Northern District of California. BioSpyder's Chief Scientific Officer, Bruce Seligmann, noted "the vast majority of documents related to BioSpyder's TempO-Seq technology is located in Carlsbad." Dkt. No. 23-4, Declaration of Bruce Seligmann ("Seligmann Decl.") ¶ 5. Likewise, the locus for "documents and things related to the development of [HTG's] patented technology [is] located in Tucson." Mot. at 7. HTG argues the case should be transferred to the District of Arizona because BioSpyder's Chief Scientific Officer, Bruce Seligmann, resides in Tucson. Dkt. No. 24, ("Reply") at 2. Further, HTG notes that "[t]he reason BioSpyder infringes today is because of technology [Seligmann] helped develop at HTG, took from HTG and improperly gave to BioSpyder – all while he was in Tucson." *Id.* Thus, the location of relevant witnesses, evidence and events weigh in favor of transfer.

Nevertheless, BioSpyder marshals three arguments to support its claim that the Northern District of California is the center of gravity in this patent dispute. First, it notes that "BioSpyder sells its products and services in this District." Opp at 1. However, there is no indication of the extent of this activity beyond a general statement that there are "significant and growing sales of its TempO-Seq technology." Seligmann Decl. ¶ 15.

Second, BioSpyder argues its collaborations with local educational institutions that utilize the TempO-Seq technology tie the parties to this district. *See* Opp. at 12; *see also Dex Prod., Inc. v. Houghteling*, No. C 05-05126 SI, 2006 WL 1751903, at *7 (N.D. Cal. June 23, 2006) (finding "the proper venue is the district where the alleged infringing acts took place"). However, simply because some infringing activity took place in this district does not make it the center of gravity of this case. *See Synopsys, Inc. v. Mentor Graphics Corp.*, No. C 12-5025 MMC, 2013 WL 1365946, at *6 (N.D. Cal. Apr. 3, 2013) (holding that accused activity, such as research and development work, in the district does not render it the "center of accused activity"). In this case, BioSpyder's collaborations consist of "provid[ing] its TempO-Seq technology . . . for use in key research projects." Opp. at 5. Thus, there is no indication that these collaborations played a role in the design, development, or manufacturing of the alleged infringing technology. Likewise,

Case No.: 5:20-cv-05607-EJD
ORDER GRANTING MOTION TO TRANSFER VENUE
5

there is sparse indication that anyone involved in these collaborations will serve as a critical witness in the case. *See Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, No. 19-CV-07223-EMC, 2020 WL 1922635, at *4 (N.D. Cal. Apr. 21, 2020) (holding that a partnership with a company located in the district does not confer weight to plaintiff's choice of forum since it was "not clear that [the partner] actually does anything of substance that would make it a critical witness on the issue of infringement").

Third, BioSpyder states that HTG maintains "a facility in this District that employs the technology, EdgeSeq, which [HTG] asserts is covered" by the Patent. Opp at 4. However, HTG is in the process of closing its San Carlos laboratory and "transfer[ing] equipment and other materials . . . to Tucson." Reply at 3. Moreover, HTG avers that none of the relevant information related to the Patent are available at this facility nor did employees there utilize the patented technology. Mot. at 8.

Based on the foregoing, the Court finds that the "center of gravity" does not rest in the Northern District of California. Instead, the center of this controversy implicates the District of Arizona. This factor favors transfer.

### C. Convenience of the Witnesses

The convenience of the witnesses is often the most important factor in deciding whether to transfer venues. *TransPerfect*, 2010 WL 3619565, at *3. Courts may consider "not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony." *Nanografix*, 2019 WL 2240439, at *6 (citing *Kannar v. Alticor, Inc.*, No. 08-5505, 2009 WL 975426, at *2 (N.D. Cal. Apr. 9, 2009)). Additionally, courts grant differing weight to witnesses affiliated with the parties verses non-party witnesses that may need to be compelled to testify by a court order. *Am. GNC Corp.*, 2018 WL 6074395, at *18. Therefore, the Court will consider these classes of witnesses separately.

i. Party Witnesses

The inconvenience for witnesses "increases with distance from home" due to travel time, expenses, and time away from regular employment. *In re Nintendo Co., Ltd.*, 589 F.3d 1194,

Case No.: 5:20-cv-05607-EJD
ORDER GRANTING MOTION TO TRANSFER VENUE
6

1198 (Fed. Cir. 2009). Consideration of inconvenience to employee-witnesses, however, is discounted by the fact that they can be compelled to testify as part of their employment. *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988).

In total, both parties explicitly name six potential party witnesses. HTG avers that "all HTG party witnesses . . . live in the district [of Arizona]," including the current Chief Financial Officer, Shaun McMeans. Mot. at 9. BioSpyder, on the other hand, indicates that it plans to call, at least, five party witnesses – four of whom reside in the Southern District of California and one in the District of Arizona. Dkt. Nos. 23-1, 23-2 Declaration of Joshua Mack ("Mack Decl.") ¶ 4, Exh. A. The record does not disclose any potential BioSpyder party witnesses in this district.

To support its motion, HTG put forth, what BioSpyder calls, "travel-agent type information." Opp. at 1. However, this information convincingly shows that travel, whether by car or flight, is nearly identical between San Diego or San Jose, and Tucson, respectively. Mot. at 13-14 ("Tucson is roughly 433 miles from Carlsbad, which is estimated to take about 6 hours . . . San Jose is approximately 431miles from Carlsbad, which is estimated to take 6 hours and 57 minutes by car."). BioSpyder does correctly note that HTG employees can be compelled to testify, however, this claim applies in equal force to its own party witnesses. Opp. at 10.

Altogether, one third of the named party witnesses are in the District of Arizona. Significantly, one of these individuals is Bruce Seligmann, who has been identified as a "central character in this case" due to his affiliations with HTG and BioSpyder. Reply at 2. The remaining named party witnesses reside in the Southern District of California and will need to travel regardless of whether the trial is held in this district or the District of Arizona. Furthermore, this latter segment of witnesses would be equally inconvenienced by court proceedings given the comparable travel times between Tucson and San Jose. Therefore, this factor tilts in favor of transfer.

ii.     Non-Party Witnesses

Conversely, "particular consideration is given to the convenience of *non-party* witnesses." *Am. GNC Corp.*, 2018 WL 6074395, at *18 (citing *Credit Acceptance Corp. v. Drivetime*

Case No.: 5:20-cv-05607-EJD
ORDER GRANTING MOTION TO TRANSFER VENUE
7

1  *Automotive*, No. CV 13-01531 (MRWS), 2013 WL 12124382, at *2 (C.D. Cal. Aug. 5, 2013)
2  (emphasis in original)). This factor considers whether non-party witnesses are subject to subpoena
3  power of the judicial forum where the case is litigated. *Am. GNC Corp.*, 2018 WL 6074395, at
4  *18. Therefore, a substantial number of non-party witnesses within the subpoena power of the
5  court weighs in favor of transfer to that district. *Id.*

6  In opposition, BioSpyder contends that "many of the third-party witnesses . . . are located
7  in this district." Opp. at 10. However, BioSpyder only explicitly names one of these third-party
8  witnesses. *Id.* The significance of these non-party witnesses, however, is discounted by the fact
9  that BioSpyder does not provide any declarations regarding the witness' convenience concerns.
10 *See Am. GNC Corp.*, 2018 WL 6074395 ("The absence of declarations from either witness . . .
11 undermines the weight the Court should afford" the party's assertions).

12 Turning to HTG's list of non-party witnesses, five (three of whom are also listed by
13 BioSpyder) are located within the subpoena power of the District of Arizona in Tucson. Mot. at
14 10. The remaining non-party witness resides in Minneapolis, Minnesota. *Id.* at 4. Ultimately,
15 given the lack of indication that any of the listed witnesses are unwilling to testify, coupled with
16 the significant number of non-party witnesses located in Arizona, the Court concludes this factor
17 weighs in favor of transfer to the District of Arizona.

18 **D.    Interest of Justice**

19 In evaluating the interest of justice, a court may also consider "public interest factors such
20 as court congestion, local interest in deciding local controversies, conflicts of laws, and burdening
21 citizens in an unrelated forum with jury duty." *Decker Coal Co. v. Commonwealth Edison, Co.*,
22 805 F.2d 834, 843 (9th Cir.1986) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6
23 (1981)). The Court considers these factors below.

24            i.    Forum's Familiarity with the Applicable Law

25 This case requires the application of federal patent law. The District of Arizona and the
26 Northern District of California have equal familiarity with the law at issue. *Glaxo Grp. Ltd.*, 2010
27 WL 1445666, at *5. While BioSpyder is correct that the Northern District of California has
28 Case No.: 5:20-cv-05607-EJD
ORDER GRANTING MOTION TO TRANSFER VENUE
8

specialized local patent rules, HTG correctly notes that BioSpyder may request the District of Arizona to apply this district's local rules. *TransPerfect*, 2010 WL 3619565, at *5. Therefore, this factor is neutral.

### ii.     Court Congestion

Administrative considerations such as docket congestion are given little weight in assessing the propriety of a Section 1404(a) transfer. *Am. GNC Corp.*, 2018 WL 6074395, at *21. HTG submitted statistics showing "median time to trial for patent cases in the past five years in the District of Arizona was 3.23 years compared to 2.76 years in the Northern District of California." Mot. at 16. This disparity is not significant enough to alter the transfer calculus.

### iii.    Local Interest in Controversy

Both parties make colorable arguments for each venue having a local interest in the controversy. On one hand, BioSpyder notes its collaborations with local universities. Opp. at 12. As discussed above, collaborations and partnerships of this nature are not enough to warrant the type of local interest BioSpyder claims. On the other hand, HTG notes the importance of protecting its patented technology, thereby enhancing its status as a "homegrown Tucson biotech company." Mot. at 17. While these factors counteract one another to a degree, on balance this factor slightly favors transfer.

### iv.     Cost of Litigation

The cost of the litigation need not be precisely equal; however, the transfer should not simply shift inconvenience from one party to another. *STX, Inc.*, 708 F. Supp. 1551, 1556.

As noted, neither of the parties is based in this district. Therefore, litigating this case will likely require travel and other related expenses. HTG posits the cost of airfare and hotels is roughly equivalent between San Jose and Tucson. Mot. at 13. However, transfer to the District of Arizona would thereby cause "travel and attendance costs for Defendant . . . [to] drop dramatically" whereas BioSpyder would be similarly burdened. *Id.* at 14. Therefore, this factor weighs against transfer.

### v.      Access to Evidence

Case No.: 5:20-cv-05607-EJD
ORDER GRANTING MOTION TO TRANSFER VENUE
9

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citing *Neil Bros. v, World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)).  The emphasis of this factor has diminished "as technological advances in document storage and retrieval have greatly reduced the burden of transporting documents." *TransPerfect*, 2010 WL 3619565, at *4.

Here, neither party advances any argument that access to documents will be easier in this district.  Any documentation related to the development of BioSpyder's TempO-Seq technology is likely in the Southern District of California, whereas information related to HTG's Patent is likely in the District of Arizona.  Together, this factor is neutral.

## IV.    CONCLUSION

For the foregoing reasons, HTG's Motion to Transfer Venue is GRANTED.  The Clerk of the Court is directed to transfer the matter to the District of Arizona and to close the file.

**IT IS SO ORDERED.**

Dated:  January 25, 2021

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:20-cv-05607-EJD
ORDER GRANTING MOTION TO TRANSFER VENUE
10