**FARHANG & MEDCOFF**

100 S. Church Avenue
Tucson, Arizona 85701
Roscoe J. Mutz (#030696)
rmutz@farhangmedcoff.com
*Additional counsel on signature page*

*Attorneys for Plaintiff BioSpyder*
*Technologies, Inc. and Counterclaim-Defendants*
*BioSpyder Technologies, Inc., Bruce Seligmann,*
*Mitseljung Discovery and Diagnostics, LLC,*
*and CellSensus, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
## TUCSON DIVISION

| | |
|---|---|
| BioSpyder Technologies, Inc., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> HTG Molecular Diagnostics, Inc., a Delaware corporation, <br><br> Defendant and Counterclaim-plaintiff, <br><br> v. <br><br> BioSpyder Technologies, Inc., a Delaware corporation; Bruce Seligmann, an individual; Mitseljung Discovery and Diagnostics, LLC, an Arizona corporation; and CellSensus, Inc., a Delaware corporation, <br><br> Counterclaim-defendants. | Civil Action No. CV-21-34-TUC-RCC <br><br> **BIOSPYDER TECHNOLOGIES, INC.'S OPPOSITION TO HTG'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT AND CROSS MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 8,741,564** <br><br> **ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. BACKGROUND ............................................................................................ 1

III. ARGUMENT ................................................................................................ 9

   A. Legal Standards ................................................................................... 9

   B. TempO-Seq Lacks Three Elements Required by the '564 Patent ........................ 10

     1. TempO-Seq Does Not Use a CFS .................................................... 11

       a. Claim 1 Requires a Target Nucleic Acid Molecule Separate from a CFS ..... 11

         i. The CFS and Target Nucleic Acid Molecule Are Separate Elements in Claim 1 ............................................................................... 13

         ii. The Specification Confirms that the CFS and Target Nucleic Acid Molecule Are Separate Elements ............................................ 15

         iii. The Prosecution History Confirms that the CFS and Target Nucleic Acid Molecule Are Separate Elements ................................... 18

       b. TempO-Seq's Accused "CFS" Cannot Be the Claimed CFS Because It Is Not Complementary to the Accused "Flanking Sequence" .......................... 19

     2. TempO-Seq Does Not Have a "Flanking Sequence" ......................... 20

     3. TempO-Seq Does Not Use a "Nuclease Specific for Single-Stranded Nucleic Acid Molecules" ......................................................... 21

IV. CONCLUSION ............................................................................................ 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Cases** .......................................................................................................**Page(s)**

*Becton, Dickinson & Co. v. Tyco Healthcare Grp.*,
    616 F.3d 1249 (Fed. Cir. 2010) .................................. 11, 13, 14, 18

*Bicon, Inc. v. Straumann Co.*,
    441 F.3d 945 (Fed. Cir. 2006) ................................................. 14

*Conmed Corp. v. Cosmescu*,
    No. 6-13-cv-1226-GTS-TWD, 2016 WL 4991606 (N.D.N.Y. Sept. 19, 2016)............ 14

*Digital–Vending Services Int'l, LLC v. Univ. of Phoenix, Inc.*,
    672 F.3d 1270 (Fed. Cir. 2012) ................................................ 14

*Engel Indus., Inc. v. Lockformer Co.*,
    96 F.3d 1398 (Fed. Cir. 1996) ........................................... 13, 17

*Gaus v. Conair Corp.*,
    363 F.3d 1284 (Fed. Cir. 2004) .......................................... 13, 18

*Grupo Bimbo, S.A. B. De C.V. v. Snak King Corp.*,
    No. CV1302147ABVBKX, 2014 WL 12591935 (C.D. Cal. Dec. 2, 2014) .......... 15, 18

*Intellicall, Inc. v. Phonometrics, Inc.*,
    952 F.2d 1384 (Fed. Cir. 1992) ................................................ 10

*Johnson & Johnston Associates Inc. v. R.E. Service Co., Inc.*,
    285 F.3d 1046 (Fed. Cir. 2002) ................................................ 20

*Laitram Corp. v. Rexnord, Inc.*,
    939 F.2d 1533, 1535 (Fed. Cir. 1991) ......................................... 10

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996 ............................. 10

*MiTile, Ltd. v. Hasbro, Inc.*, 984 F. Supp. 2d 525, 531 (E.D. Va. 2013) ........................ 13

*Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*,
    82 F. App'x 691 (Fed. Cir. 2003) ............................................. 15

*Ottah v. Fiat Chrysler*,
    884 F.3d 1135 (Fed. Cir. 2018) ............................................... 10

*Regents of Univ. of Minnesota v. AGA Med. Corp.*,
   717 F.3d 929 (Fed. Cir. 2013) ............................................................. passim

*Sage Prods. Inc. v. Devon Indus., Inc.*,
   126 F.3d 1420 (Fed. Cir. 1997) ...................................................................... 20

*Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*,
   373 F. Supp. 3d 1288 (N.D. Cal. 2019) ................................................... 13, 16

*U.S. Phillips Corp. v. Iwasaki Elec. Co.*,
   505 F.3d 1371 (Fed. Cir. 2007) ...................................................................... 10

*Ultra-Tex Surfaces, Inc. v. Hill Brothers Chem. Co.*,
   204 F.3d 1360 (Fed. Cir. 2000) ...................................................................... 10

*United States v. JP Morgan Chase Bank Account No. Ending
8215*, 835 F.3d 1159 (9th Cir. 2016) ................................................................ 9

*Wolverine World Wide Inc. v. Nike, Inc.*,
   38 F.3d 1192 (Fed. Cir. 1994) ........................................................................ 10

*Wright Med. Tech., Inc. v. Osteonics Corp.*,
   122 F.3d 1440 (Fed. Cir. 1997) ...................................................................... 15

*Zetwick v. City of Yolo*,
   850 F.3d 436 (9th Cir. 2017) ............................................................................ 9

**Rules** ...............................................................................................**Page(s)**

Fed. R. Civ. P. 56(a). ............................................................................................ 9

I.    INTRODUCTION

HTG was issued the '564 patent because both the United States Patent and Trademark Office and the International Searching Authority concluded that HTG's invention was the first to have a "CFS" to protect a "flanking sequence."  The accused TempO-Seq technology has neither.  For each of these reasons and others, summary judgment of infringement should be denied, and summary judgment of noninfringement should be granted.

II.    BACKGROUND

Bruce Seligmann founded the company now known as HTG Molecular Diagnostics back in 1997.  *See* Declaration of Jacob Zweig in Support of BioSpyder's Opposition to HTG's Motion for Partial Summary Judgment of Infringement and BioSpyder's Cross Motion for Partial Summary Judgment of Noninfringement ("Zweig Decl."), Ex. D.  Dr. Seligmann and three colleagues filed a patent application that eventually issued in 2014 as U.S. Patent 8,741,564 ("'564 patent").  Doc. 84-9 ('564 patent).

The '564 patent claims an improvement on "quantitative Nuclease Protection Assays" and "quantitative Nuclease Protection Sequencing." [1]  *See* Doc-84-9, Abstract.  Nuclease protection assays are useful for determining whether a sample contains a particular "target" nucleic acid molecule.  *See* Declaration of Dr. John Quackenbush in Support of BioSpyder's Opposition to HTG's Motion for Partial Summary Judgment of Infringement and BioSpyder's Cross Motion for Partial Summary Judgment of Noninfringement ("Quackenbush Decl."), at ¶¶ 22-34.  A nuclease protection assay works by contacting the sample with a separate nucleic acid probe that specifically binds[2] to the target nucleic acid

---

[1] Nuclease protection assays were well-known at the time, as reflected in the "References Cited" section of the '564 patent, which lists articles with titles such as "Multiplexed Screening Assay for mRNA Combining Nuclease Protection with Luminescent Array Detection," (2002); "Transcriptional Analysis of Intracytoplasmically Stained, FACS—Purified Cells by High-Throughput, Quantitative Nuclease Protection," (2009); and "Quantitative Nuclease Protection Assay in Paraffin-Embedded Tissue Replicates Prognostic Microarray Gene Expression in Diffuse Large-B-Cell Lymphoma," (2007).  *See* Doc-84-9, Coversheet, References Cited; *see also* Quackenbush Decl., ¶¶ 31-32.

[2] Also called "hybridizing" or "annealing."  Quackenbush Decl., ¶ 33.

1

molecule. *Id.* at ¶ 28. The probe binds to the target nucleic acid molecule because sequence of bases in the probe are the "complement" of the target nucleic acid base sequence. *Id.* at ¶ 33. This complementary nucleic acid molecule is called the "nuclease protection probe." *Id.* at ¶¶ 28, 33. Figure 2 of the '564 patent shows target nucleic acid molecules binding to probes. *See* Doc-84-9, Fig. 2. This figure shows a modified portion of Figure 2 to show only the target (in blue) and nuclease protection probe that binds to the target (in green).



This combination of a target nucleic acid and a probe is still difficult to detect, though, because of the other nucleic acids still in the sample. Quackenbush Decl., ¶ 28. Consequently, the next step in any nuclease protection assay is to contact the sample with an enzyme[3] called a "nuclease" that breaks down (also called "digesting" or "degrading") nucleic acids that are not bound to probes. *Id.* at ¶¶ 28-29, 33, 36, 40. The assay developed by HTG and claimed in the '564 patent relies on having a region of "double-stranded" nucleic acid formed by binding a probe to a specific region of interest in the sample and adding a type of nuclease called an "endonuclease"[4] that digests

---

[3] "Enzymes" are proteins that function as catalysts of biological reactions. *Id.* at ¶ 35. Virtually every cellular function—from digesting sugar to processing waste to fermentation—is carried out by enzymes. *Id.*

[4] An "<u>endo</u>nuclease" is in contrast to an "<u>exo</u>nuclease." Quackenbush Decl., ¶ 37. Exonucleases digest only from a "free end" of a nucleic acid. *Id.* The two ends of a nucleic acid are referred to as the 5' (or upstream) and 3' (or downstream) ends. *Id.* The 5-prime/3-prime nomenclature comes from which carbon atom in the backbone of the nucleic acid is at the end. *Id.* Some exonucleases specifically digest from the 3' end, some only from the 5' end, and some can work from either end. *Id.* The '564 patent mentions both endonucleases

single-stranded nucleic acids. *Id.* at ¶¶ 34-40. Once the unbound, single-stranded nucleic acids have been digested and are out of the way, there are a number of ways to detect whether or not the target nucleic acid is present in the sample. *Id.* at ¶¶ 25, 40-42.

HTG's '564 patent focuses on one strategy for detecting the target nucleic acid in a nuclease protection assay. *Id.* at ¶¶ 30-32, 43-44. Two common detection methods are PCR amplification (to make many copies of a target or a region of a target) and sequencing (to determine the sequence of bases in the nucleic acid). *Id.* at ¶ 41. These techniques are often combined. *See id.* at ¶ 42. Scientists use particular enzymes for amplification and sequencing that being catalyzing their reactions by first binding to particular "start here" sequences on a nucleic acid molecule. *Id.* To facilitate rapid, reliable, large-scale amplification and sequencing, "start here" sequences are often added to the nuclease protection probes themselves.[5] *Id.* A particularly useful strategy is to use synthetic "start here" sequences that do not occur naturally in the target so that the scientist can control exactly what the enzymes amplify and/or sequence. *Id.*

The '564 patent uses the strategy of adding these "start here" sequences at the end (or both ends) of the nuclease protection probe. *Id.* at ¶ 43; Doc. 84-9, claim 1. It calls these additions "flanking sequences" because they are next to one end or the other of the nuclease protection probe; the nuclease protection probe along with its flanking sequence(s) is called an "NPPF." Quackenbush Decl., ¶ 43; Doc. 84-9, 1:51-52. The '564 patent also refers to the flanking sequences as "wings," reflecting the fact that they extend off the ends of the nuclease protection probe. Quackenbush Decl., ¶ 43; Doc. 84-9, Fig. 6; Zweig Decl., Ex. A at HTG00025927, Ex. E, at pp. 2-3. This shows the same portion of Figure 2 of the '564

---

and exonucleases in its text (*see, e.g.*, Doc-84-9, 8:61-64), but each of the examples in the patent use the S1 nuclease, which is an endonuclease. Quackenbush Decl., ¶ 38. Endonucleases digest all single-stranded nucleic acids, regardless of whether there is a free end. *Id.*

[5] The technical name for a "start here" sequence is "primer binding site."

patent, adding in the flanking sequences that contain the "start here" sequences. The target nucleic acid (in blue) is 200. The nuclease protection probe (in green) with flanking sequences (in yellow) (together the "NPPF") is 202. *See* Doc. 84-9, 3:63-4:6.



Because the flanking sequence "wings" are not bound to the target nucleic acid molecule, they are single-stranded and therefore vulnerable to the endonuclease that is later added. Quackenbush Decl., ¶ 44; Doc. 84-9, 2:55-64. In the '564 patent, HTG solved this problem by adding small pieces of single-stranded nucleic acids that the patent calls "a sequence complementary to the flanking sequence (CFS)." Doc. 84-9, claim 1. This shows the same Figure 2 of the patent, with the CFS (204) being shown in orange stripes. *See* Doc. 84-9, 3:63-4:6.



HTG describes the CFS more colorfully in its marketing materials as a "wingman." Quackenbush Decl., ¶ 44; Zweig Decl., Ex. A at HTG00025927, Ex. E, at pp. 2-3. This graphic shows a "wingman" figure taken from HTG's website, modified to use the same color scheme, and reoriented so that the target



molecule is at the top. *See* Zweig Decl., Ex. E, at p. 3. The CFS sequences protect the flanking sequence "wings" that contain the "start here" sequences from digestion by the endonuclease. Quackenbush Decl., ¶ 44.

The addition of the CFS/wingman is what earned HTG its patent. The '564 patent issued from U.S. Pat. App. No. 14/115,032. Doc. 84-9, '564 patent, Coversheet at (21). In the "statement of reasons for allowance," the Examiner identified "contacting" the flanking sequence of the claimed probe with the "CFS" as the innovative and inventive feature, compared to the prior art that was previously known:

> The closest prior art to the allowed claims is the subject matter of Church et al. (PGPub 2009/0137407) which contains methodology depicted in Figure 10 wherein polynucleotides hybridize to target polynucleotides with a flanking non-hybridized segment. Single stranded polynucleotides are digested away, **however, the subject matter of Church et al. does not include contacting with a protective polynucleotide to the flanking segment described in the instant claims as CFS**. Thus, the instantly claimed invention is neither taught nor suggested by the prior art of record.

Zweig Decl., Ex. C ('564 patent Notice of Allowance), at p. 6 (emphasis added).

The inventiveness of the CFS/wingmen was also persuasive outside the United States. HTG had filed an international Patent Cooperation Treaty ("PCT") application to seek patent rights outside the United States. The International Searching Authority (under the PCT) came to the same conclusion: the invention was patentable because of the CFS:

> [N]one of the prior art on file disclose the features of the claimed invention, **in particular the use of a CFS oligonucleotide** to protect the hybridised flanking sequence of a probe during a nuclease protection assay. . . .
>
> The problem addressed by the present invention is to allow amplification of probes detected during a nuclease protection assay. **The claimed solution** is to provide a flanking region with a universal primer and **protect** this region with a complementary sequence (**CFS**). . . .
>
> [T]he skilled worker would not have been motivated to apply the universal primer of D2 [U.S. Pat. No. 6,090,589, ("Dimond")] to the nuclease

protection assay of D1 [U.S. Pat. Appl. 2008/0268451 ("Seligmann 2008")] because it is central to the concept of a nuclease protection assay that all single-stranded nucleic acids are degraded. **The present invention provides a solution to this by adding a CFS molecule to protect the flanking region. This approach is not disclosed or suggested in any of the available prior art and thus involves an inventive step.**

Zweig Decl., Ex. B (PCT Int'l Prelim. Report on Patentability), at p. 4 (emphasis added).

The PCT examiner's reasoning for patentability was accepted by examiners in Australia, Canada, China, Europe, and Japan, resulting in granted patents in those countries.[6] These decisions reflect the essential role of the CFS in the '564 patent of protecting the flanking regions from the nuclease.

Meanwhile, just after HTG filed the applications for the '564 patent in the U.S. and abroad, Dr. Seligmann left HTG to explore new ventures in molecular biology. *See* Zweig Decl., Ex. D. His departure was an extended one. He stayed on at HTG as a consultant for a couple of years to help HTG apply for grant funding to support their business development. *See* Doc. 44-2 (Seligmann-HTG contractor agreement), Ex. A. While he was consulting for HTG, and with HTG's knowledge, Dr. Seligmann also consulted for BioSpyder, which had been founded the previous year, but was still in its infancy. BioSpyder considers Dr. Seligmann a co-founder, albeit a later-joining founder when he joined BioSpyder as an employee after ending his consulting relationship with HTG. Zweig Decl., Ex. F, at BIOS0031146. BioSpyder took a different approach to developing methods of detecting nucleic acid sequences. *See* Quackenbush Decl., ¶ 45. In the BioSpyder TempO-Seq assay, instead of adding flanking sequences and protective wingmen to the ends of a nuclease protection probe, BioSpyder added the "start here" sequences for amplifying and sequencing *in the middle* of the nuclease protection probe. *Id.*; Doc. 84-4 (TempO-Seq User Guide), at pp. 4-5; BioSpyder's Responsive Statement of Facts in Opposition to HTG's Motion and Statement of Facts in Support of Cross Motion ("RSOF"), ¶¶ 49, 51-52. This figure shows

---

[6] *See* HTG patent nos. AU2012251027B2; CA2834976; CN103649335B; EP 2705165 B1; JP 5951755 B2, available at https://worldwide.espacenet.com/patent/search/.

the same color scheme:  blue for target, green for probe, yellow for the "start here"

sequence.[7]  When the probe specifically binds to the target sequence, the added "start here"

sequence (in the middle of the probe elements that bind to and protect the targe) forms a loop that does not bind to the target and remains single-stranded.  Quackenbush Decl., ¶ 45; Doc. 84-4, at pp. 4-5; Doc. 84-3 (TempO-Seq article), at



p. 5; RSOF ¶ 51.

Then, TempO-Seq uses a special nuclease called a 3' exonuclease—different from the one used in the '564 patent examples.  Quackenbush Decl., ¶ 46; Doc. 84-3, at p. 5; RSOF ¶¶ 53-54.  This exonuclease digests single-stranded nucleic acids one base at a time, and only from a 3' end that is not attached to anything.  Quackenbush Decl., ¶ 46; RSOF ¶ 53.  It ignores 5' ends.  Quackenbush Decl., ¶ 46; RSOF ¶ 53.  The nuclease stops when it encounters a double stranded sequence, and cannot digest a single stranded sequence that is attached to a double stranded sequence at its 3' end.  Quackenbush Decl., ¶ 46; RSOF ¶ 53. This special nuclease is referred to as an <u>exo</u>nuclease because it digests from the "outside" and cannot touch anything "inside" double stranded sequences.  Quackenbush Decl., ¶¶ 39, 46.  The loop of nucleic acids that contains the "start here" sequences is not digested by the 3' exonuclease because the loop is in the middle of the nuclease protection probe, protected on both ends by double-stranded nucleic acids.  Quackenbush Decl., ¶ 46; RSOF ¶ 53.  There is no free 3' end, so the 3' exonuclease does not digest the loop.  Quackenbush Decl., ¶ 46;

---

[7] The nucleic acid shown in red, the "$PO_4$," and the small gap to the left of the "$PO_4$," are connected to other parts of BioSpyder's technology that are not at issue in this motion.  In BioSpyder's materials, the sequences added to the sample are called "detector oligos."  An "oligo" in this context is a short piece of nucleic acid.  BioSpyder does not dispute that its detector oligos are nuclease protection probes.

RSOF ¶ 53.  Because of this unique property, there is no need for an additional protective CFS or any sequence complementary to the added nucleic acid segments.  Quackenbush Decl., ¶ 46; RSOF ¶ 49.

The difference in types of nucleases is critical because if the S1 endonuclease of the '564 patent examples were used in the BioSpyder design, the endonuclease would digest away the "loop" containing the "start here" sequences.  Quackenbush Decl., ¶ 47; RSOF ¶¶ 51, 53.  Thus, TempO-Seq would not work using the S1 nuclease.  Quackenbush Decl., ¶ 47; RSOF ¶¶ 51, 53.  This incompatibility further demonstrates how BioSpyder's technology is fundamentally different from HTG's.  *See* Quackenbush Decl. at 48-50.

After working on this technology at BioSpyder for over two years, Dr. Seligmann (along with BioSpyder colleagues Anthony Stevens, Joanne Yeakley, and Joel McComb) filed a patent application on this technology on January 27, 2015.  Zweig Decl., Ex. G (US9,856,521), Coversheet at (60) (prov. pat. app. filing date).  In that application, BioSpyder provided the HTG '564 patent as background for the patent examiner's consideration as prior art.  *Id.*, Coversheet, References Cited (citing '564 patent).  The examiner found the TempO-Seq method novel and inventive, and the Patent Office issued BioSpyder U.S. Patent No. 9,856,521 on January 2, 2018.  *Id.*, Coversheet at (45) (issue date).  Patent examiners in Australia, Japan, Singapore, and the United Kingdom have reached the same conclusion and granted BioSpyder patents in each of those countries.[8] BioSpyder commercially launched this technology as TempO-Seq in June 2015 and has since also released the TempO-SPan and TestTheTeam products, which both use the TempO-Seq technology.  TestTheTeam is a test for COVID-19, and TempO-SPan offers more detailed sample tracking.

---

[8] *See* BioSpyder patent nos. AU2016211632A1, JP6768706B2, SG11201706086X, GB2542929A, available at https://worldwide.espacenet.com/patent/search/.

III.    ARGUMENT

Given these fundamental technical differences, it is not surprising that BioSpyder's TempO-Seq technology does not infringe the HTG '564 patent. BioSpyder's TempO-Seq technology does not use a flanking sequence that is protected by a CFS and uses a different type of nuclease. RSOF ¶¶ 49-54. For these reasons,



Claim 1 of the '564 Patent

1. A method of determining a sequence of at least one target nucleic acid molecule in a sample, comprising:
   contacting the sample with at least one nuclease protection probe comprising a flanking sequence (NPPF) under conditions sufficient for the NPPF to specifically bind to the target nucleic acid molecule,
   wherein the NPPF comprises:
   a 5'-end and a 3'-end,
   a sequence complementary to a region of the target nucleic acid molecule, permitting specific binding between the NPPF and the target nucleic acid molecule,
   a flanking sequence located 5', 3', or both, to the sequence complementary to the target nucleic acid molecule, wherein the flanking sequence comprises at least 12 contiguous nucleotides not found in a nucleic acid molecule present in the sample, providing a universal amplification sequence, and wherein the flanking sequence is complementary to at least a portion of an amplification primer;
   contacting the sample with a nucleic acid molecule comprising a sequence complementary to the flanking sequence (CFS) under conditions sufficient for the flanking sequence to specifically bind to the CFS;
   contacting the sample with a nuclease specific for single-stranded nucleic acid molecules under conditions sufficient to remove unbound nucleic acid molecules, thereby generating a digested sample comprising NPPFs hybridized to the target nucleic acid molecule and to the CFS(s);
   amplifying NPPFs in the digested sample with the amplification primer, thereby generating NPPF amplicons; and
   sequencing at least a portion of the NPPF amplicons, thereby determining the sequence of the at least one target nucleic acid molecule in the sample.

• TempO-Seq does not use a "flanking sequence"

• TempO-Seq does not use a CFS

• TempO-Seq does not use a nuclease specific for single-stranded nucleic acid molecules

HTG's motion for summary judgment should be denied, and summary judgment of noninfringement of the '564 patent should be granted.

A.    Legal Standards

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact." *Zetwick v. City of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Patent infringement analysis is a two-step process. "The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) (citations omitted). "Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *U.S. Phillips Corp. v. Iwasaki Elec. Co.*, 505 F.3d 1371, 1374–75 (Fed. Cir. 2007) (internal quote and citation omitted). The patentee must prove infringement by a preponderance of the evidence. *Ultra-Tex Surfaces, Inc. v. Hill Brothers Chem. Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000). A finding of the existence of an issue of fact on even one element of a patent claim requires a denial of summary judgment. *See U.S. Phillips Corp*, 505 F.3d at 1374–75; *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991) ("[T]he failure to meet a single limitation is sufficient to negate infringement of the claim.").

Where an independent patent claim is not infringed, dependent claims are also not infringed. *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994). Claims 2-20 of the '564 patent all depend (directly or indirectly) from claim 1. Because BioSpyder does not infringe claim 1, it does not infringe any other claim of the '564 patent.

Determining the scope and meaning of patent claims is claim construction, an issue of law that may be resolved on summary judgment. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387 (Fed. Cir. 1992); *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1140-41 (Fed. Cir. 2018) (same). "[D]isagreement over the meaning of a term within a claim does not necessarily create a *genuine* issue of material fact." *Intellicall*, 952 F.2d at 1387.

B.   TempO-Seq Lacks Three Elements Required by the '564 Patent

The method claimed by the '564 patent is to **determine a sequence of at least one target nucleic acid in a sample**." To do this, the '564 patent requires "**contacting the sample**" with three different things:  (1) **"a nucleic acid molecule comprising a sequence**

10

**complementary to the flanking sequence (CFS)"**; (2) **"at least one nuclease protection probe comprising a flanking sequence (NPPF)"**; and (3) **"a nuclease specific for single-stranded molecules."** Doc. 84-9, claim 1. When the claim terms are properly construed, TempO-Seq lacks each of these elements.

### 1. TempO-Seq Does Not Use a CFS

TempO-Seq lacks "a sequence complementary to the flanking sequence (CFS)" as a matter of law. RSOF ¶¶ 49-50. Claim 1 lists the "CFS" as a *separate* element from the "target nucleic acid molecule," that must be "contacted" with the sample that contains the target nucleic acid. *See* Doc. 84-9, claim 1. Nothing in the specification or prosecution history of the '564 patent supports a different construction. *See, e.g.*, *Becton, Dickinson & Co. v. Tyco Healthcare Grp.*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) ("Where a claim lists elements separately, the clear implication of the claim language is that those elements are distinct components of the patented invention.") (internal citations and quotations omitted).

HTG tries to argue that the CFS of TempO-Seq is *part of* the "target nucleic acid molecule" itself. The target nucleic acid molecule is actually a separately claimed element. *See* Doc. 84-9, claim 1. Further, what HTG identifies as the CFS is not "complementary to" the nucleic acid that HTG argues is the "flanking sequence" used by TempO-Seq. RSOF ¶ 50. Complementarity is required by claim 1. For each of these reasons, there can be no genuine dispute of material fact that the Accused Product lacks a CFS.

### a. Claim 1 Requires a Target Nucleic Acid Molecule Separate from a CFS

HTG identifies the purported "target nucleic acid molecule" as the blue line labeled "RNA" in this image, taken from the TempO-Seq User Guide, with annotations in red by HTG. *See*



From HTG Mot. at 10.

HTG's Motion for Summary Judgment ("HTG Mot."), Doc. 83, at 10; Doc. 84-4, Fig. 1.
HTG asserts that the "probe comprising a flanking sequence (NPPF)" in TempO-Seq is what
BioSpyder refers to as a "detector oligo," several of which are shown in this image, which
also depicts a detector oligo binding to a target nucleic acid molecule. HTG Mot. at 10.

The '564 patent requires "**contacting the sample with a nucleic acid molecule
comprising a sequence complementary to the flanking sequence (CFS) under conditions
sufficient for the flanking sequence to specifically bind to the CFS.**" Doc. 84-9, claim 1.
HTG contends that the "sequence complementary to the flanking sequence (CFS)"
requirement is met *by a portion of the target nucleic acid molecule*—the nucleic acid
molecule to be sequenced—itself. HTG Mot. at 13-14; RSOF ¶ 49. HTG admits as much,
stating "the sequence complementary to the
flanking sequence is in the same nucleic
acid molecule as the target sequence," *id.* at
13, and including an image showing the
"CFS" as the portion of the "target nucleic
acid molecule" (blue line), *id.* at 14. Thus,



From HTG Mot. at 14.

according to HTG, in the method of the Accused Product, there is no *separate* CFS, but
rather HTG points to a portion of the target nucleic acid molecule. *Id.* at 13-14; RSOF ¶ 49.
While HTG tries to argue that binding to the target is the same as the step of "contacting the
sample with a nucleic acid molecule comprising a sequence complementary to the flanking
sequence (CFS)," this is simply not the case. You cannot practice the claimed method of
contacting the sample with a CFS by instead contacting the sample with itself. *See*
Quackenbush Decl., ¶¶ 72-73. HTG's argument goes against binding precedent on claim
construction, and HTG's own expert, Dr. Chelsky, never even opines that in the context of
the '564 patent, the CFS can be part of the target nucleic acid molecule.

It is well-settled that "[w]here elements are listed separately, courts construe them as
distinct components unless the claim language itself suggests otherwise." *Simpson Strong-*

12

*Tie Co., Inc. v. Oz-Post Int'l, LLC*, 373 F. Supp. 3d 1288, 1295 (N.D. Cal. 2019) (citing *Becton, Dickinson & Co.*, 616 F.3d at 1254–55 (affirming separateness of elements listed separately where the "unequivocal language" of the claim required separate structures); *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288–89 (Fed. Cir. 2004) (affirming separateness requirement where the "clear implication of the claim language" was that the components were distinct); *Regents of Univ. of Minnesota v. AGA Med. Corp.*, 717 F.3d 929, 935 (Fed. Cir. 2013) (affirming separateness of method steps where the language described "first" and "second" disks that were joined); *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1404–05 (Fed. Cir. 1996) (concluding that where a claim provides for two separate elements in method steps, a "second portion" and a "return portion," these two elements "logically cannot be one and the same")).

Here, under *Gaus v. Conair*, the "clear implication" of claim 1 is that the "sequence complementary to the flanking sequence (CFS)" and the "target nucleic acid molecule" are separate elements. This implication is supported by the specification and prosecution history. *See MiTile, Ltd. v. Hasbro, Inc.*, 984 F. Supp. 2d 525, 531 (E.D. Va. 2013) ("[C]laim elements can overlap structurally but only if intrinsic evidence, like the claims and specification, support reading structural overlap into the patent. Absent such evidence, the presumption is that elements separately listed connote elements separately structured.").

### i. The CFS and Target Nucleic Acid Molecule Are Separate Elements in Claim 1

The language of claim 1 makes clear that the "CFS" and "target nucleic acid molecule" must be separate elements. First, the claim lists them separately (*see* Doc. 84-9, claim 1; Quackenbush Decl., ¶ 52), which implies that they are distinct components. *See Gaus*, 363 F.3d at 1288 (holding that where "[t]he claim lists" elements "separately … the clear implication of the claim language is that" they are "distinct component[s]."); *Simpson Strong-Tie Co., Inc.*, 373 F. Supp. 3d at 1295 (citing *Becton, Dickinson & Co.*, 616 F.3d at

13

1254) ("Because all the elements are listed separately, the implication is that they are distinct components of the '998 Patent.").

Second, the claim requires "contacting the sample with a … CFS." Doc. 84-9, claim 1. The preamble of the claim recites that the "target nucleic acid molecule" is in the "sample." Doc. 84-9, claim 1. It would be nonsensical to require "contacting" the sample with a CFS *if the CFS were already present in the sample* (as part of the target nucleic acid molecule, as HTG contends). Quackenbush Decl., ¶ 52; *cf. Regents of Univ. of Minnesota*, 717 F.3d at 935 (affirming construction of language requiring disks to be "affixed," "joined," or "connected" to require that the disks "before being affixed, joined, or connected, exist separately as individual, physically distinct disks"); *Becton, Dickinson & Co.*, 616 F.3d at 1255 ("Becton's assertion that the spring means and the hinged arm can be the same structure renders the asserted claims nonsensical. Independent claim 1 of the '544 patent describes the spring means as being 'connected to' the hinged arm …."); *Conmed Corp. v. Cosmescu*, No. 6-13-cv-1226-GTS-TWD, 2016 WL 4991606, at *2 (N.D.N.Y. Sept. 19, 2016) ("Defendants' argument that the term 'attaching' should not require separate structure defies logic and common sense[.]").

HTG argues that the order of the steps should not limit the scope of the claim. HTG Mot. at 8. But the *order* of steps is not the problem with HTG's proposed construction. Rather, HTG's proposed construction would render the claim the step of "contacting the sample with a nucleic acid molecule comprising a sequence complementary to the flanking sequence (CFS)," superfluous, because the claimed CFS *would already be present* as part of the claim preamble's disclosure of "at least one target nucleic acid molecule in a sample." Doc. 84-9, claim 1; RSOF ¶ 49. It would mean that the "contacting the sample with a . . . CFS" would add nothing at all to the claim. It is well-established that courts should avoid a claim construction, like the one HTG proposes, that would render claim language surplusage. *See, e.g.*, *Digital–Vending Services Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1275 (Fed. Cir. 2012) (quoting *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006))

14

(rejecting construction that would render claim language surplusage as "contrary to the well-established rule that 'claims are interpreted with an eye toward giving effect to all terms in the claim.'"); *Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*, 82 F. App'x 691, 694 (Fed. Cir. 2003) (holding district court erred in making claim construction that rendered terms "surplusage" and "superfluous"); *Wright Med. Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1444 (Fed. Cir. 1997) (affirming district court's claim construction that properly avoided rendering terms "surplusage").

Third, the claim recites the "CFS" and "target nucleic acid molecule" as having different functions. The "target nucleic acid molecule" is the thing to be sequenced; it is the "target" of the claimed method, the final step of which is "determining the sequence of the at least one target nucleic acid molecule in the sample." *See* Doc. 84-9, claim 1; Quackenbush Decl., ¶ 53. The purpose of the "CFS" is to bind to and thereby protect the claimed probes ("NPPFs") from the nuclease. *See* Doc. 84-9, claim 1; Quackenbush Decl., ¶ 53. That the "CFS" and "target nucleic acid molecule" have different functions also supports that they are separate components of the claimed invention. *See Grupo Bimbo, S.A. B. De C.V. v. Snak King Corp.*, No. CV1302147ABVBKX, 2014 WL 12591935, at *5 (C.D. Cal. Dec. 2, 2014) (construing claim language that separately describes two elements "which perform different functions" to require separate components). Thus, as in *Gaus v. Conair*, the "clear implication" of claim 1 is that the CFS and target nucleic acid molecule must be separate components.

### ii. *The Specification Confirms that the CFS and Target Nucleic Acid Molecule Are Separate Elements*

The specification of the '564 patent confirms that the "CFS" and "target nucleic acid molecule" must be separate components because it consistently discusses them as separate components, with separate functions.

In every instance that it discusses the "CFS," the specification never teaches or suggests that it can be part of the "target nucleic acid molecule." *See* Quackenbush Decl., ¶

54. Likewise, in every instance it discusses the "target nucleic acid molecule," the specification never teaches that it can include the "CFS." *See id.* Instead, the specification repeatedly and consistently lists these two elements separately. *See id.* at ¶ 55. In several places, the specification even contrasts them—referring, for example, to "regions of the NPPF that hybridized to target only (but not CFS), or that hybridized to CFS only (but not target)," Doc. 84-9, 22:65-67, and "conditions sufficient for the NPPFs to specifically hybridize to their respective target nucleic acids and their respective CFSs," *id.*, 23:58-60. *See* Quackenbush Decl., ¶ 55. The specification also treats the target and CFS as separate molecules that bind to the NPPF forming a multi molecule complex: "NPFF molecules that have bound thereto the target nucleic acid molecule, **as well as the CFS**, thereby generating a double-stranded molecule that includes at least **three** contiguous oligonucleotide sequences. . . . [T]he target nucleic acid molecule, **as well as the CFS(s)**, . . . bind to the NPPFs." Doc. 84-9, 8:33-50 (emphasis added). HTG points to Figs. 2 and 5A, but these figures depict and refer to separate targets 200 and CFSs 204 in Fig. 2 (*id.*, 3:63-4:6) and separate targets 400 and CFSs 406 in Fig, 5A (*id.*, 3:43-54). *See* Quackenbush Decl., ¶ 55. The specification also refers to the "CFS" as something that is "added to the sample." *E.g.*, Doc. 84-9, 24:62.[9] The target nucleic acid is *part of* the sample. *See* Doc. 84-9, claim 1; Quackenbush Decl., ¶ 55. It is nonsensical to "add" the sample to itself. Thus, "[t]he specification confirms the separate elements limitation by exclusively discussing and representing" the CFS and target nucleic acid molecule separately. *See Simpson Strong-Tie Co.*, 373 F. Supp. 3d at 1295; *see also Regents of Univ. of Minnesota*, 717 F.3d at 936 ("The separateness requirement is also fully supported by the specification, which is 'the single best guide to the meaning of a disputed term.' … The '291 specification never teaches an embodiment constructed as a single piece." (internal citation omitted)); *Grupo Bimbo*, 2014

---

[9] The '564 specification uses this same language about the NPPF being "added to the sample." *e.g.*, Doc. 84-9, 6:61. This further supports the conclusion that the CFS, like the claimed NPPF, is a separate element that must be "added" in the "contacting" steps for the CFS and NPPF of claim 1. *See* Quackenbush Decl., ¶ 55.

WL 12591935, at *6 (holding that the specification "supports the presumption that the separately identified 'exit conveyor' and 'acceleration conveyor' are separate components" where "[a]t no point does the specification discuss the exit conveyor and the acceleration conveyor as a single unit").

The specification also teaches that the "target nucleic acid molecule" and the "CFS" have different functions. *See* Quackenbush Decl., ¶ 53. The specification describes the function of the "CFS" as "[t]he CFS hybridizes to and thus protects its corresponding flanking sequence from digestion with the nuclease in subsequent steps." Doc. 84-9, 8:38-41; Quackenbush Decl., ¶ 53. In subsequent steps, the method can include "contacting the sample with a nuclease specific for single-stranded (ss) nucleic acid molecules or ss regions of a nucleic acid molecule, … under conditions sufficient to remove nucleic acid bases that are not hybridized to a complementary base." Doc. 84-9, 8:49-55; Quackenbush Decl., ¶ 53. The nuclease will remove unwanted "ss [single-stranded] nucleic acid molecules in the sample," such as "NPPFs that have not bound target nucleic acid molecule or CFSs, as well as unbound target nucleic acid molecules … and unbound CFSs." Doc. 84-9, 8:55-59; Quackenbush Decl., ¶ 53. Because the flanking sequences of NPPFs that are properly bound to CFSs form part of "NPPFs present as double stranded adducts," these NPPFs (including their flanking sequences) remain intact, "generate[ing] a digested sample." Doc. 84-9, 8:59-61; Quackenbush Decl., ¶ 53. It is important that the flanking sequences remain present in the sample, because the '564 patent teaches that they provide key benefits including amplification primer binding sites for a later amplification step. Doc. 84-9, 6:30-45; 9:7-9:50; Quackenbush Decl., ¶ 53.

In all its discussion of the "target nucleic acid molecule" and "CFS," the specification never teaches that a "target nucleic acid molecule" or any portion thereof can perform the CFS's nuclease protection function. *See* Quackenbush Decl., ¶ 56. Rather, the specification defines the "target nucleic acid molecule" as "a nucleic acid molecule that is capable of detection, or of interest, or useful to detect with the disclosed methods." Doc. 84-9, 55:36-

38; Quackenbush Decl., ¶ 56. The '564 patent consistently describes the "target nucleic acid molecule" in this way. *See* Quackenbush Decl., ¶ 56. That nothing in the specification suggests that the target can perform the nuclease protection function of the CFS again supports the presumption that the "CFS" and "target nucleic acid molecule" must be separate components. *See Gaus*, 363 F.3d at 1288 (holding that components must be separate and distinct where "[n]othing in the [written] descriptions of those two components suggests that their structures or functions overlap"); *Grupo Bimbo*, 2014 WL 12591935, at *6 (holding that the specification "supports the presumption that the separately identified 'exit conveyor' and 'acceleration conveyor' are separate components" where "[a]t no point does the specification discuss the exit conveyor and the acceleration conveyor as … performing overlapping functions").

### iii. *The Prosecution History Confirms that the CFS and Target Nucleic Acid Molecule Are Separate Elements*

The prosecution history of the '564 patent further supports the construction that the "CFS" and "target nucleic acid molecule" must be separate components. As described above, both the U.S. Patent Office (*see* Zweig Decl., Ex. C, at p. 6) and the International Searching Authority (*see id.*, Ex. B, at p. 4) concluded that the '564 patent was patentable because of the introduction of the novel CFS. *See Becton, Dickinson & Co.*, 616 F.3d at 1255 (finding that "[w]hat distinguished the claimed invention from the prior art was the addition of a spring means separate from the hinged arm" supported the implication that claimed hinged arm and spring means were separate structures); *Regents of Univ. of Minnesota*, 717 F.3d at 939 ("[T]he prosecution history shows that the University described the innovative aspect of the claimed device as an improved way of connecting the two disks. We conclude that the district court properly construed the '291 patent as requiring two physically separate disks.").

### b. *TempO-Seq's Accused "CFS" Cannot Be the Claimed CFS Because It Is Not Complementary to the Accused "Flanking Sequence"*

Separate from the issue of the CFS having to be separate from the target nucleic acid molecule, what HTG identifies as the "CFS" in TempO-Seq does not meet other requirements of the CFS. Claim 1 recites "contacting the sample with a nucleic acid molecule comprising a sequence **complementary to the flanking sequence** (CFS)." Doc. 84-9, claim 1. Yet HTG contends that the portion of the target sequence identified by HTG as the CFS only needs to be "complementary to" a *portion* of the oligo identified by HTG as the "flanking sequence." HTG Mot. at 13-14; RSOF ¶ 50. The claim does not include the option of being "complementary to *all or a portion of* the flanking sequence."



From HTG Mot. at 14.

*See* Doc. 84-9, claim 1. The CFS needs to be complementary to "the" flanking sequence. HTG's infringement argument imports the words "all or a portion of" into claim, which impermissibly broadens its scope. The portion of the TempO-Seq nuclease protection probe that provides a universal amplification sequence (in yellow) is not hybridized to a complementary sequence, but rather is a single-stranded loop between two sequences that are bound to the target nucleic acid. *See* Quackenbush Decl., ¶¶ 57-60; RSOF ¶¶ 50-51.

Had HTG wanted the claim to cover a CFS that was complementary to "all or a portion of" the flanking sequence, it could have drafted the claim that way. For instance, the claim requires the flanking sequence to be "complementary to *at least a portion of* the amplification primer." And in the specification, the applicant describes other methods where the CFS is "complementary *to all or a portion* of a flanking sequence." Doc. 84-9, 2:42-43. The specification discloses this as a possibility, but then the possibility is not claimed. According to the Federal Circuit, "when a patent drafter discloses but declines to claim subject matter . . . this action dedicates that unclaimed subject matter to the public." *Johnson*

*& Johnston Associates Inc. v. R.E. Service Co., Inc.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) (*en banc*).  Moreover, such disclosed but unclaimed subject matter cannot be recaptured by the patentee under the doctrine of equivalents.[10]  *Id.* (citing *Sage Prods. Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997) ("Application of the doctrine of equivalents to recapture subject matter deliberately left unclaimed would 'conflict with the primacy of the claims in defining the scope of the patentee's exclusive right.'").  HTG's attempted expansion of the claim scope is unsupported and should be rejected.

### 2. TempO-Seq Does Not Have a "Flanking Sequence"

Claim 1 requires a "flanking sequence" on one or both sides of the sequence complementary to the target nucleic acid molecule.  Doc. 84-9, claim 1; Quackenbush Decl., ¶ 61.  As explained by HTG's own expert:

> The term 'flanking sequence' is a common expression in the biological sciences, which is a sequence that 'flanks' something else, in the same sense that a lay person would use the term 'flank.'  The definition of flank in the Merriam-Webster dictionary is reflective of that understanding.  It defines the verb 'flank' as "to be situated at the side of".  *See* https://www.merriam-webster.com/dictionary/flank. In the context of the '564 patent, a flanking sequence is one that is to the side of or next to another sequence, either on one side (*e.g.* 5') or the other (3') or both.

Doc. 85, ¶ 38.  Claim 1 requires the flanking sequence to contain "a universal amplification sequence"—one of the "start here" sequences described above.  Doc. 84-9, claim 1; Quackenbush Decl., ¶ 61.  HTG asserts that the "loop" in TempO-Seq is the "flanking sequence."  HTG Mot. at 12.  But the "loop" cannot be "flanking" because it is in the *middle* of the sequence complementary to the target sequence, not "to the side of or next to" the sequence complementary to the target sequence.  Quackenbush Decl., ¶ 61; RSOF ¶¶ 51-52.

To the extent that HTG argues that the "flanking sequence" includes the part of the probe to the "right" of the "loop" that is complementary to the target nucleic acid, that

---

[10] The doctrine of equivalents is a patent law doctrine that in certain limited situations allows for a finding of infringement even if each element of a claim is not literally present.  HTG has never accused TempO-Seq of infringing the '564 patent under the doctrine of equivalents.

argument fails. Claim 1 requires the flanking sequence be "complementary to at least a portion of an amplification primer." The "amplification primer" is the "start here sequence." Quackenbush Decl., ¶ 62. The portion of TempO-Seq's probe that is complementary to the target nucleic acid sequence is not complementary to the amplification primer "start here" sequence. *Id.*; RSOF ¶ 51. The only portion of the TempO-Seq nuclease protection probe that is complementary to the amplification primer binding cite is in the "loop." Quackenbush Decl., ¶ 62; RSOF ¶ 51.

Likewise, to the extent that HTG argues that the "sequence complementary to the target nucleic acid molecule" is only the *portion* of nuclease protection probe to the "left" of the "loop," that argument also fails. The goal of both the HTG claimed invention and the TempO-Seq assay is to measure what is happening with a particular gene in a sample by obtaining a sequence from part of the gene. *See, e.g.*, Doc. 84-9, 13:20-29; Doc. 84-4, pp. 4-5. The "target" of the assay is the nucleic acid strand representing the gene of interest. *See, e.g.*, Doc. 84-9, 13:20-29; Doc. 84-4, pp. 4-5. And, as argued by HTG itself, the "target nucleic acid sequence" is the entire nucleic acid strand. HTG Mot. at 10 (*see* annotated figure); *see also* Quackenbush Decl., ¶¶ 63, 66-71. By that definition, consistent with the plain and ordinary meaning of "target nucleic acid molecule," all of the portions of the TempO-Seq probe that specifically bind to this target are "sequence complementary to the target nucleic acid molecule." Quackenbush Decl., ¶ 63; RSOF ¶¶ 51-52. In TempO-Seq, there is no sequence that contains a universal amplification sequence *and* "flanks" the sequence complementary to the target nucleic acid molecule by hanging off the *end* of the probe. Quackenbush Decl., ¶ 63; RSOF ¶¶ 51-52.

### 3. *TempO-Seq Does Not Use a "Nuclease Specific for Single-Stranded Nucleic Acid Molecules"*

As noted previously, there are many different types of nucleases. Claim 1 of the '564 patent requires "a nuclease specific for single-stranded nucleic acid molecules." TempO-Seq does not use such a nuclease. *See* Quackenbush Decl., ¶ 64; RSOF ¶¶ 53-54.

When molecular biologists use the term "specific for" to describe an enzyme like a nuclease, they understand that means the enzyme will carry out its reaction for any molecule that satisfies its specific criteria. Quackenbush Decl., ¶ 64. The '564 patent distinguishes nucleases generally from nucleases that are "specific for single-stranded nucleic acid molecules." The specification defines "nuclease," "endonuclease," and "exonuclease," and then says "[i]n particular examples, a nuclease is specific for single-stranded nucleic acids, such as S1 nuclease, Mung bean nuclease, Ribonuclease A, or Ribonuclease T1." Doc. 84-9, 12:61-13:7; *see also* Doc. 84-9, 26:16-26. These four nucleases are all <u>endo</u>nucleases. Quackenbush Decl., ¶ 38. An endonuclease can digest a single-stranded portion of a nucleic acid—like a loop—even if it doesn't have a free 5' or 3' end. *Id.*

Exonucleases are enzymes that will specifically digest one base at a time from the 3' or 5' ends of an unprotected, single-stranded nucleic acid—not *any* single-stranded nucleic acid. *See id.* at ¶¶ 37-38, 65. The TempO-Seq assay uses a "3' exonuclease" that leaves single-stranded 5' ends of nucleic acids and single-stranded loops undigested, only targeting the single-stranded 3' ends for which they are specific. *Id.* at ¶ 65; Doc. 84-3 (TempO-Seq article), at p. 5; RSOF ¶ 53. This fact is undisputed. *See* HTG's Statement of Facts, Doc. 86, ¶ 39. But HTG offers no evidence at all that such a 3' exonuclease is a "nuclease specific for single-stranded nucleic acid molecules." HTG's expert, Dr. Chelsky, does not opine that it is, and HTG cites his declaration (*see* Doc. 86, ¶ 39) only as a "see generally" to the three paragraphs where he explains that there are a large number of nucleases and how the S1 endonuclease works in the '564 patent.

If a nuclease specific for single-stranded nucleic acid molecules (like the S1 nuclease, Mung bean nuclease, Ribonuclease A, and Ribonuclease T1 listed in the specification) were added to the TempO-Seq assay, the "loop" portion would be digested by the enzyme, rendering the nucleic acids unsuitable for amplification or sequencing. TempO-Seq simply would not work with a "nuclease specific for single-stranded nucleic acid molecules," as required by HTG's claim. Quackenbush Decl., ¶¶ 64-65; RSOF ¶¶ 51, 53-54.

IV.    CONCLUSION

Summary judgment of infringement should be denied and summary judgment of noninfringement should be granted.  BioSpyder's TempO-Seq technology does not infringe the '564 patent for at least four reasons.  Each of these reasons independently justifies summary judgment of noninfringement.  Denying HTG's summary judgement motion of infringement requires even less:  a finding of the existence of an issue of fact on even one element requires a denial of summary judgment.

First, because "CFS" and "target nucleic acid molecule" are properly construed as requiring separate components and HTG admits they are *not* separate components in TempO-Seq, summary judgment of no infringement is appropriate.  *See Regents of Univ. of Minnesota*, 717 F.3d at 939 (Fed. Cir. 2013) (affirming summary judgment of noninfringement based on claim construction requiring separate elements).  Second, Claim 1 is properly construed to require the claimed CFS to be complementary to the claimed flanking sequence.  There is no dispute that the TempO-Seq element that HTG accuses of being the CFS is not complementary to the entire sequence that HTG accuses of being the flanking sequence.  Third, properly construed, TempO-Seq has no "flanking sequence" because the sequence accused of being the flanking sequence is in the middle of the nuclease protection probe rather than on its flank.  Fourth, TempO-Seq does not use a "a nuclease specific for single-stranded molecules" as properly construed.

There is no dispute about how TempO-Seq works.  The only dispute is how the '564 patent's claims should be construed.  Properly construed, BioSpyder does not infringe the claims and respectfully requests entry of summary judgment of noninfringement.


Dated this 6th day of August, 2021

Respectfully submitted,

By:    /s/ *Karen I. Boyd*
      Karen I. Boyd (*Pro hac vice*)
      boyd@turnerboyd.com
      Jacob Zweig (*Pro hac vice*)

zweig@turnerboyd.com
TURNER BOYD
702 Marshall Street, Suite 640
Redwood City, California 94063

Tim Horton (*Pro hac vice*)
timhorton@timhortonlaw.com
LAW OFFICE OF TIMOTHY A. HORTON
600 Broadway, Suite 700
San Diego, California 92101

Roscoe J. Mutz (#030696)
rmutz@farhangmedcoff.com
FARHANG & MEDCOFF PLLC
100 South Church Avenue, Suite 100
Tucson, AZ 85701

*Attorneys for Plaintiff/Counterclaim-defendants*